Ramsdell *v.* Buswell.

---

SAMUEL C. RAMSDELL *versus* SILAS BUSWELL.

Replevin is maintainable only against a person having possession or control of the chattels to be replevied.

*Sayward* v. *Warren*, 27 Maine, 453, overruled.

ON EXCEPTIONS.

APPLETON, C. J.—Replevin for a stove. There was ·evidence tending to show that, prior to the date of the writ, the defendant had sold the stove in controversy to his father, and that at that time the same was in the possession and under the control of the father, and not of the son. The defendant requested the presiding Justice to instruct the

Ramsdell *v.* Buswell.

jury, if the stove was thus in the possession and control of the father and not of the son, that, in such case, the action could not be maintained against the son, but he ruled otherwise, and that the action was maintainable.

The question presented is whether in a replevin suit, A against B, the officer by virtue of his process may replevy the goods in controversy in whose soever hands they may be found, they being neither in the possession nor under the control of the defendant.

The action of replevin is to a certain extent a process *in rem.* It lies for the recovery in *specie*, of any personal chattel which has been taken and detained by the defendant from the owner's possession, with damages for its detention. The action must be against the person having possession of and unlawfully taking or detaining the chattel to be replevied.

The action of replevin is regulated in this State by R. S., 1857, c. 96. The statute assumes that the property to be replevied is in the possession of the defendant, from whom the officer is to take it and restore the same to the plaintiff, upon his giving the bond required by law. If the plaintiff recovers, he is entitled to damages. If he fail, the goods are to be restored to the defendant, who may recover damages for the taking. A writ of return issues and, if not restored, the defendant in replevin has his remedy on the replevin bond as well as the writ of reprisal. The statute in all its provisions implies that the property replevied was in the possession of the defendant, that it was taken from his possession by the writ, and, in case of failure on the plaintiff's part, is to be restored to the possession of the defendant.

The form of the writ is prescribed by R. S., 1821, c. 63, § 9. The direction is to the sheriff that he replevy the goods and chattels following (here describe them) belonging to P. D. of B., in the county of P., *now taken, detained or attached* (as the case may be) *by* S. P. of B., county of P., at said B, and them deliver unto the said P. D., &c. The

goods to be replevied are *now*, that is, when the writ is made and served, taken, detained and attached by the defendant. The mandate of the writ is to take the goods from the person taking and detaining them, and not from the public generally.

The defendant is to "answer unto the said plaintiff in a plea of replevin; for that the defendant, on the           day of      A. D. 186      at said          unlawfully and without any justifiable cause, *took* the chattels of the said plaintiff as aforesaid, and them unlawfully detained *to this day*;" &c. The declaration, it will be perceived, implies, not merely a wrongful taking, but a wrongful and continuing detention.

The officer is to serve the process "provided he, the said plaintiff, shall give bond to the said defendant, with sufficient sureties, in the sum of          dollars, being twice the value of the said goods and chattels, to prosecute the said replevin to final judgment, and to pay such *damages* and costs as the defendant shall recover against          and also to return and restore the same goods, in like good order and condition as when taken, in case such shall be the final judgment." The person from whom the goods are taken is the person to whom they are to be restored. He is the only person injured, if replevied without right. He is the one who can claim damages. In the case at bar, the case finds that the defendant neither owned the property nor had it in his possession at the date of the plaintiff's writ. The defendant, therefore, was entitled neither to a return nor to damages. The real owner, who was in possession, is thus left without protection. At any rate, he could not vindicate his rights in this action. His property is taken from him by a process to which he is a stranger.

It seems to have been held that, at common law, replevin would not lie for an unlawful detention, but that in such case *detinue* or trover was the proper remedy. *Meany* v. *Head*, 1 Mason, 319. But, in this State, it was early decided that the statute so far altered the common law, that this action may be maintained for goods unlawfully detained,

though the original taking was lawful. *Seaver* v. *Dingley*, 4 Greenl., 300. The same was held to be the law in Massachusetts. *Baker* v. *Fales*, 16 Mass., 151.

The ruling of the presiding Justice is based upon the decision in *Sayward* v. *Warren*, 27 Maine, 453. But, upon a careful examination of the opinion in that case, we are satisfied it is against the spirit of the statute as well as against the weight of judicial authority. The decision is predicated upon the assumption that trespass *de bonis asportatis* and replevin are concurrent remedies. The Court cite the remarks of SUTHERLAND, J., in *Chapman* v. *Andrews*, 3 Wend., 240, in which he says, "the doctrine of this Court I consider as settled, that replevin lies for such a taking as will sustain an action of trespass *de bonis asportatis.*" But such cannot be regarded as sound law. If the chattel is destroyed it cannot be replevied, though the owner may bring trespass *de bonis.* So, in case of a tortious detention, when the taking was lawful the owner may bring trover or replevin, though he cannot maintain trespass for such detention. It is obvious one may be maintained and the other not. The remedies, therefore, are not in all cases concurrent. *Sharp* v. *Wittenbach*, 3 Hill, 576; *Roberts* v. *Randel*, 3 Sandf., 707.

In *Pangburn* v. *Partridge*, 7 Johns., 140, the Court say, "the old authorities are, that replevin lies for goods taken tortiously, or by a trespasser." In this as well as in the other cases cited, as *Thompson* v. *Bullen*, 14 Johns., 84, *Clark* v. *Skinner*, 20 Johns., 465, and *Chapman* v. *Andrews*, 3 Wend., 240, the articles replevied were in the possession and under the control of the defendants. The language of the court has reference to the existing state of facts. The remedies are concurrent, if the trespasser has the goods in his possession, and while and as long as they remain under his control. With this qualification, and only as thus qualified, can the conflicting authorities be reconciled.

"In Comyn, title Replevin, A, it is laid down," remarks WHITMAN, C. J., in *Sayward* v. *Warren*, "even, that if

cattle, after the taking, return to the owner, still, that replev-
in lies for the. wrongful taking." By recurring to Comyn,
it will be found that his reference is to *Fitzherbert de Natu-
ra brevium*, 69, H, where the law is thus laid down:—"And
if the lord distrain his tenant's cattle wrongfully, and after-
wards the cattle return back unto the tenant:—yet the ten-
ant shall have replevin against the lord for these cattle, and
shall recover damages for the wrongful distraining of them,
*because he cannot have an action of trespass against his lord
for that distress;* but against a servant or bailiff he may.   1
H, 6, 7." This reasoning cannot be regarded as having any
weight at the present day ; certainly not as against the plain
intent of the statute.

The result is that the action of replevin for chattels is
only maintainable against the individual having them in pos-
session, either personally or by his servant.   Such is the
law in Massachusetts, as determined in *Richardson* v. *Reed*,
4 Gray, 441, and in Pennsylvania, as decided in *English* v.
*Dalbraw*, 1 Miles, 160.                     *Exceptions sustained.*

CUTTING, KENT, DICKERSON and DANFORTH, JJ., con-
curred.

BARROWS, J., dissenting.—I am unwilling to concur in
overturning what seems to me the righteous and well con-
sidered decision of our own Court, in *Sayward* v. *Warren*,
27 Maine, 453.   It covers precisely the point presented in
this case. By it the wrongful taker is held responsible to
the true owner, in an action of replevin, for such wrongful
taking, accompanied by a continued detention of the proper-
ty by the wrongdoer's grantee.   Why should he not be ?
He is privy to the detention.   It is continued *by his authori-
ty*, not only up to the time of the making and service of the
writ, but up to the time of the trial, except so far as the
service of the writ places the property in the custody of
the law.· Can *he* be permitted to say that that is not *his* act
which is done solely by the authority which he has assumed
to confer ? By the act of selling, which he puts in evidence,

he asserts title in himself to the property in controversy, as against the plaintiff in replevin. That puts an end to any question *between them as to the taking and detention by the defendant.* The main question then is,—which is the true owner? Now when he finds that question likely to be decided against him, shall he invoke and receive the assistance of the Court to change the issue which he has been litigating, and defeat the true owner's right to recover damages and costs against him, because, forsooth, without the knowledge of the owner, he had transferred his wrongful possession to some third party, who, under and by virtue of *his authority,* continues the wrongful detention?

I do not think that any technicalities pertaining to the action of replevin under our statutes require us to do any such piece of injustice. If they do, the value of replevin as a remedy is greatly impaired,—for, if the defendant's title seems likely to fail, it needs only the intervention of some convenient and irresponsible father, brother, son, or friend, to convert defeat into victory, at the last moment, by testimony which the owner of the property would seldom or never be able to controvert.

R. S., c. 96, § 8, provides, in substance, that the owner or person entitled to the possession of personal chattels, may cause them to be replevied when unlawfully taken or detained from him. The remedy can be pursued only in cases where the officer serving the writ can get possession of the property so as to deliver it to the plaintiff. *When that is done,* I see no valid objection to allowing the plaintiff to maintain the suit against any one who would be liable to him in trespass for the wrongful taking. It is, doubtless, in view of *that* condition of things that the various *dicta* treating trespass *de bonis* and replevin as concurrent remedies have been enunciated. When that condition of things *does* exist, *why* are not such *dicta correct* and applicable? The judgment is not conclusive except upon the parties and their privies. The rights and the remedies of no third parties, claiming by an independent title, are in the least degree

affected or interfered with. If the person summoned as defendant has not wrongfully taken or detained the plaintiff's goods, let him plead a simple *non cepit*, and, if the plaintiff fails to establish a tortious taking or detention by him or his authority, he has his judgment for costs, as in case of any other defendant wrongfully sued. But when he asserts a title to the property, and has had it in his possession by a tortious taking, do not let him defeat the owner's claim against him for damages and costs, after he has put the owner to the proof of his title, by saying, what in plain English amounts to just *this,* — "true, I have taken this man's goods and detained them from him, but, before he could get his writ made, I shuffled the control of them, without his knowledge, into the hands of a third person, who, when the officer came with the writ, had a possession unknown to the plaintiff and claimed title *under me.* The plaintiff has proved that the goods are his and not mine, but let him pay me my costs and litigate the matter anew with my grantee." It seems to me that this is limiting § 8, c. 96, in a way which the Legislature never designed.

Against whom shall the owner of goods unlawfully taken pursue the remedy given in that section? Why not against the man who (as the owner knows and can prove) unlawfully took the goods, and who claims the right to take and to dispose of them? It seems to me that the sale by the wrongful taker is, *quoad* the owner, *res inter alios,* and not admissible to affect his rights.

Stress is laid upon the fact that the bond required of the plaintiff is to run to the defendant, and the Chief Justice remarks as follows : — "If the plaintiff recovers, he is entitled to damage. If he fail, the goods are to be restored to the defendant;" and again, "the statute in all its provisions implies that the property replevied was in the possession of the defendant," that it was taken from his possession by the writ of replevin, and, in case of failure on the plaintiff's part, is to be restored to the possession of the defendant." I do not suppose that he means that a judgment for a re-

turn is in all cases a necessary accompaniment of a judgment in favor of the defendant, or a necessary consequence of the failure of the plaintiff to maintain his suit. *But then the argument fails,* for it seems the Legislature *did* contemplate cases where a defendant in replevin might make a successful defence, and yet not be entitled to damages or a return. Chapter 96, § 11, provides for a judgment of return with damages, only, "*if it appears that the defendant is entitled to a return.*"

It may be worth while to remark that, while the *dicta* in *Richardson* v. *Reed,* 4 Gray, 441, cover the case at bar, the two cases are totally dissimilar. It was decided there that the attaching creditor could not be joined as defendant in replevin with the officer making the attachment, —METCALF, J., remarking, that "attached goods are in the legal custody and possession of the officer *only.* The attaching creditor has no property in them, general or special; no right to the possession of them, and no right of action against a third person who may take them from the officer or destroy them. How then can goods be returned on a writ of return or reprisal to him who *never had* the possession of them nor the right of possession?"

The distinction between that case and this is, that the attaching creditor *never had* possession nor the right of possession, and never *claimed* to have had either property or possession. Otherwise, here.

He cannot say that he does not *now* detain them, whose grantee is detaining them. As WHITMAN, C. J., says, "he virtually did detain it till replevied." It can hardly be considered as certain that the Massachusetts Court will ever push the *dicta* in *Richardson* v. *Reed* to *this* extent by an actual decision in a similar case. My conviction is, that the exceptions here ought to be overruled.

*J. A. Peters,* for the defendant.

*F. A. Wilson,* for the plaintiff, cited *Sayward* v. *Warren,* 27 Maine, 453.