# THE BALTIMORE, CHESAPEAKE AND ATLANTIC RY. CO. *vs.* H. KLAFF & CO.

## *No Replevin for Goods in Custodia Legis.*

The owner of personal property cannot maintain an action of replevin for it after it has been levied on by a Sheriff under an attachment against a third person which is still pending.

Appeal from the Baltimore City Court (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Ralph Robinson* (with whom were *Bond & Duffy* on the brief), for the appellant.

*Myer Rosenbush*, for the appellee, submitted the cause on his brief.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal presents the single question whether the owner of personal property can maintain a replevin for it after it has been levied on by the Sheriff under an attachment, against a third person, which is still pending. The question arises under the following circumstances.

The appellee, as plaintiff below, instituted the present replevin suit, in the Baltimore City Court, to recover possession of certain chattels which were on board the appellant's steamer, Pocomoke, at her wharf in Baltimore City. The chattels were taken from the boat by the Sheriff under the replevin and delivered to the plaintiff. The appellant appeared to the action and pleaded *non cepit*, property in a third person, and that the goods when replevied were in possession of the Sheriff of Dorchester County who had seized them under a pending attachment.

The case was tried before the Court without a jury. There was evidence at the trial tending to show the following facts. The goods in controversy were shipped on March 17th, 1905, per the steamer Pocomoke by one Orinoff from Cambridge to Baltimore consigned to the appellee. As the boat was leaving her wharf at Cambridge the Sheriff of Dorchester County came on board and levied on the goods under an attachment by way of execution on a judgment rendered by a Justice of the Peace of that county against Orinoff. 'The goods were attached as per schedule and the writ was also laid in the hands of the captain of the boat as garnishee. The Sheriff allowed the goods to remain on board the boat and went along with them to Baltimore City. On the arrival of the boat at Baltimore the goods were taken by the Sheriff of that city under the writ of replevin in the present case. There was also evidence tending to prove the value of the goods and that they had never been the property of Orinoff but were owned by the appellee.

At the close of the evidence the appellee, as plaintiff, and the appellant, as defendant, each offered one prayer. The plaintiff's prayer asked the Court to declare, as matter of law, that if it found from the evidence that, at the time of the issuing of the writ of replevin in this case, the plaintiff was entitled to the possession and the right of possession of the goods seized under the writ, he was entitled to a verdict for the goods replevied together with such damages as the Court should find that he had sustained by reason of their detention. The Court granted that prayer.

The defendant's prayer, which was rejected, asserted the proposition that as the evidence showed that the goods replevied had prior to the replevy been attached and scheduled by the Sheriff of Dorchester County while the defendant's boat was lying at Cambridge and the attachment had been laid in the hands of the captain of the boat and he had been returned as garnishee and the schedule of the goods had been returned in the case in which the attachment had been issued, the verdict must be for the defendant.

The ruling of the Court on these two prayers presents the question whether the goods in question, being *in custodia legis* by virtue of their attachment, were liable to be replevied under the writ issued in this case.

The appellee does not deny the accuracy of the general proposition of law that property *in custodia legis* cannot be replevied but he contends that cases like the present, where the property of the plaintiff has been attached under a writ running against a third party, constitute a recognized exeeption to the proposition. In support of his contention he relies upon *Clark* v. *Skinner*, 20 Johns (N. Y.) 465, and a number of more recent cases in the Courts of last resort of many States, and also upon the statement made on page 500 of vol. 24, *Am. & Eng. Ency. of Law*, 2 ed., that "by the great weight of authority however, which in some jurisdictions is recognized by statute, it is held that where in process running against the property of one person the property of another is taken the latter may maintain replevin therefor even though the property was in possession of the attachment or execution debtor or a third person at the time of its seizure."

We have examined many of the cases appearing on the appellee's brief and of those cited in the Encyclopaedia in support of the statement there made.   Those cases undoubtedly show that in many if not the majority of the American States the exception contended for by the appellee is now recognized and upheld, but our predecessors in this Court have been clear and emphatic in maintaining the opposite view.

In *Cromwell* v. *Owings*, 7 H. & J. 55, this Court, although recognizing the fact that in this State the action of replevin has nearly taken the place of trespass and trover and is the usual and almost universal remedy resorted to for the recovery of goods in the possession of another whether tortiously taken or not, held that it will not lie for goods which are *in custodia legis* by reason of having been taken in execution under legal process, even though that process was against a stranger who was not the owner of the goods.   The Court in their opinion

admit that "the application of the rule 'that goods taken in execution cannot be replevied' to the case of a stranger whose property has been taken on an execution against another person may sometimes be attended with individual inconvenience" but they insist upon its application, saying that "it is not the officer that the law protects in doing wrong, but the possession only of the chattels in order to effect its own ends, the purpose for which the execution issued," and to prevent a contempt of the jurisdiction of the Court issuing the execution.

This Court in the opinion in that case refer to the cases of *Thompson* v. *Button*, 14 Johns. 86 and *Clark* v. *Skinner*, 20 Johns. 465, but decline to follow their reasoning or adopt their conclusions. The Court then say in concluding their opinion: "But the question whether the goods of a stranger taken out of his possession, on an execution against another person can be replevied out of the hands of the officer, having also been discussed, and being a question in which the public is materially concerned and therefore proper to be settled we avail ourselves of this occasion to express our opinion upon the subject. In *Thompson* v. *Button* and *Clark* v. *Skinner*, it is held that in such case a replevin will lie.

"But we cannot perceive any sufficient ground for the distinction. In either case the taking of the property of a stranger is wrongful as to him and as much so in one case as in the other, and if replevin will lie by a stranger whose property is taken in execution out of his possession, on the principle that it is wrongfully taken, it would seem to follow that the same writ will equally lie for an equally wrongful taking of the property of a stranger out of the possession of a defendant. But it does not depend upon the question whether the property was wrongfully taken or not, which can only be determined at the trial, but whether it was in the custody of the law or not, and that once established the possession cannot be disturbed, but the party injured is left to seek his remedy by an action of trespass or trover or to wait until the goods are sold and then regain his possession by a writ of replevin against the purchaser in whose hands they cease to be

in the custody of the law. Upon that principle we think that in no case whatsoever will replevin lie against an officer for goods taken in execution under lawful process; and so is the case of *Ilsley et al.* v. *Stubbs*, 5 Mass. 280. If it were otherwise it would always be in the power of a defendant to evade the law and defeat the ends of justice, by placing his property in the hands of a friend and causing it when taken in execution to be replevied from the hands of the officer by such friend; and thus the mischief would be just as great as to permit a defendant to replevy property taken in execution out of his own possession."

In *Ginsberg* v. *Pohl*, 35 Md. 505, a case in which the goods had been seized under an attachment which was still pending, the opinion in *Cromwell* v. *Owings* was referred to with approval and its conclusions adopted and relied on, and the cases of *Thompson* v. *Button*, 14 Johns. 86, and *Clark* v. *Skinner*, 20 Johns. 465, were referred to as having been disapproved of by this Court. *Cromwell* v. *Owings* has been cited with approval in more recent cases, the last being *Fidelity Deposit Co.* v. *Singer*, 94 Md. 132, upon other aspects of the action of replevin, but none of the conclusions to which we have referred have been doubted or called in question.

Mr. Poe, in the admirable discussion of the question when replevin will and when it will not lie appearing in sec. 252 in his work on Pleading, also holds it to be the well-established doctrine in this State that the action will not lie for goods in the custody of the law even though they may have been taken on an execution against a stranger.

The judgment appealed from must be reversed and the cause remanded.

*Judgment reversed with costs and case remanded for new trial.*

(Decided March 27th, 1906.)